CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

AUG 09 2019

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Case No. 5:05-CR-15 |
| | ) | |
| v. | ) | |
| | ) | |
| NORWOOD WALLACE BARBER, JR., | ) | By: Hon. Michael F. Urbanski |
| Defendant | ) | Chief U.S. District Judge |

## MEMORANDUM OPINION

Defendant Norwood Wallace Barber, Jr., represented by counsel, filed a motion to reduce his sentence pursuant to the First Step Act of 2018, Pub. L. No. 115-015. ECF No. 174. He asks that his sentence be reduced from 240 months to time served. The government argues that Barber is not eligible for consideration of a reduction of his sentence because he previously received an executive grant of clemency. The government additionally argues that Barber is ineligible for consideration because he was sentenced for a violation involving 1.5 kilograms of cocaine base, which exceeds the current threshold of 21 U.S.C. § 841(b)(1)(A). For the reasons set forth below, the court will **GRANT** Barber's request to modify his sentence to time served. The order will be stayed for up to ten days to allow the Bureau of Prisons time to process Barber's release.

I.

On July 13, 2005, following a jury trial, Barber was found guilty of one count of conspiring with other persons to distribute more than 50 grams of cocaine base in violation of 21 U.S.C. § 841(a)(1). ECF Nos. 1, 38. The government had previously filed a notice

pursuant to 21 U.S.C. § 851 that Barber had at least two prior felony drug convictions. ECF No. 25.

In the PSR, it was noted that Barber "was responsible for significant amounts of both powder and crack cocaine, justifying the jury's finding that the defendant was involved with more than 50 grams of cocaine base." ECF No. 177 at ¶ 14. One codefendant testified that from October 2, 2002 through June 2003, he supplied Barber with approximately 200 grams of crack cocaine weekly. There was additional testimony that on one occasion, Barber purchased one-quarter of a kilogram of powder cocaine and 4 ounces (113 grams) of cocaine base. Id. at ¶ 12.

The combination of a conviction for 50 grams or more of cocaine base and having two prior felony drug convictions resulted in a statutory mandatory life sentence for Barber. 21 U.S.C. § 841(b)(1)(A) (2002); ECF No. 177 at ¶ 58. Barber's guidelines range was calculated on 1.5 kilograms of cocaine base, which gave him a total offense level of 38 with no adjustments. He also was found to be a career offender under the guidelines, which gave him an offense level of 38.[1] ECF No. 177 at ¶¶ 18-28, 59. Based on the offense level of 38 and his criminal history category of VI, his guidelines range was 360 months to life. On December 22, 2005, the court sentenced Barber to life in prison, to be followed by a 10-year period of supervised release. ECF No. 51.

---

[1] The PSR listed his offense level as 38, when it should have been 37, but that mistake does not affect Barber's sentence under U.S.S.G. Ch. 5 Pt. A or the analysis of his claims. See U.S.S.G. §4B1.1(b)(1) (2005).

Barber sought an executive grant of clemency and it was granted by President Barack Obama on October 6, 2016. Barber's sentence of life was reduced to 240 months to be followed by a 10-year term of supervised release. ECF No. 172 at 3. Barber has served approximately 176 months and his current projected release date is June 15, 2022. ECF No. 179.

At the time Barber was sentenced, a violation of § 841(a)(1) carried a mandatory minimum sentence of 10 years and a maximum of life imprisonment if the offense involved more than 50 grams of cocaine base, and a penalty range of 5 to 40 years if the offense involved more than 5 grams of cocaine base. 21 U.S.C. § 841(b)(1)(A) and (B) (2002). In 2010, the Fair Sentencing Act was enacted, and Section 2 of the act reduced penalties for offenses involving cocaine base by increasing the threshold drug quantities required to trigger mandatory minimum sentences under 21 U.S.C. § 841(b)(1). Fair Sentencing Act of 2010, Pub. L. No. 111-220, § 2, 124 Stat. 2372 (2010). Currently, in order to trigger the 10-years-to-life-sentencing range, the offense must involve more than 280 grams of cocaine base, and to trigger the 5-to-40-year sentencing range, the offense must involve more than 28 grams of cocaine base.

The First Step Act was passed on December 21, 2018. Section 404 of the act permits a court, upon motion of the defendant or the government, or upon its own motion, to impose a reduced sentence for certain offenses in accordance with the Fair Sentencing Act of 2010, if such a reduction was not previously granted. Offenses qualify for the reduction if they were committed before August 3, 2010 and carry the statutory penalties which were modified by

section 2 or 3 of the Fair Sentencing Act of 2010. First Step Act of 2018, Pub. L. No. 115-015, 132 Stat. 015 (2018).

## II.

The government contends that Barber is ineligible for relief under the First Step Act because he received the executive grant of clemency lowering his sentence to 240 months. It argues that he no longer is serving a sentence whose penalties were modified by the First Step Act, but is serving a sentence imposed by the President. However, by the terms of the grant of clemency, the President did not impose a new sentence. Rather, the grant of clemency commuted the total sentence of imprisonment, remitted any unpaid balance of the $2,500 fine imposed by the court that remains unpaid upon Barber's release, and "[left] intact and in effect the 10-year term of supervised release imposed by the court with all its conditions and all other components of the sentence." ECF No. 172 at 3. Thus, the grant of clemency shortened the sentence, but did not impose a new sentence.

The government cites a concurring opinion in United States v. Surratt, 855 F.3d 218, 219 (4th Cir. 2017) (en banc), where the Fourth Circuit Court of Appeals dismissed as moot a habeas corpus challenge to a mandatory life sentence for a cocaine base conviction, following a presidential term commutation. Other district courts looking at Surratt in the context of the First Step Act have found that it is distinguishable. In United States v. Stallworth, No. 1:08-cr-24, 2019 WL 2912845 (W.D. Va. July 8, 2019), the court found that Surratt did not implicate the defendant's eligibility for relief under the First Step Act, because Surratt addressed the question of whether commutation of a sentence mooted a challenge to the unlawfulness of

the sentence when the commutation cured the unlawful defect in the sentence. Stallworth, 2019 WL 2912845 at *2 (citing United States v. Dodd, 372 F.Supp.3d 795, 798 (S.D. Iowa 2019). The court reasoned that defendants seeking relief under the First Step Act are not challenging the unlawfulness of their sentences, but are seeking additional relief under new statutory authority. Id. See also United States v. Buckery, No. 1:08-cr-30032, 2019 WL 2724340 at *2 (W.D. Va. July 1, 2019) (same); United States v. Mitchell, No. 05-00110 (EGS), 2019 WL 2647571 at *6 (D.D.C. June 27, 2019) (finding mootness doctrine did not apply because a case becomes moot only when it is impossible for a court to grant relief to the prevailing party, and relief is possible under the First Step Act); and United States v. Razz, 379 F.Supp.3d 1309, 1316-1317 (S.D. Fla. May 22, 2019) (noting that every court to have addressed the Surratt argument in a First Step Act case has rejected it).

The court finds persuasive the reasoning in Stallworth and the other cases cited above. Accordingly, the fact that Barber's original sentence was commuted by President Obama does not make him ineligible for relief under the First Step Act.

### III.

The government next argues that even if the court finds that the grant of executive clemency does not render Barber ineligible for relief under the First Step Act, the quantity of drugs described in the PSR, 1.5 kilograms, makes him ineligible for relief. If Barber were sentenced on 1.5 kilograms of cocaine base, his sentence would be the same today under 21 U.S.C. § 841(b)(1)(A). The government further argues that neither Apprendi v. New Jersey,

5

530 U.S. 466 (2000) nor <u>Alleyne v. United States</u>, 570 U.S. 99 (2013), apply in the context of the First Step Act.

Barber responds that he was sentenced not on the quantity of drugs described in the PSR, but on the conviction finding him responsible for 50 grams or more of cocaine base. He asserts that the relevant quantity of drugs for purposes of applicability of the First Step Act is that which defines the offense rather than the conduct, because the First Step Act applies to offenses and not conduct. <u>See</u> Sec. 404 of the First Step Act (applying Fair Sentencing Act to a "covered offense," defined as "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010").

The majority of district courts, including this one, that have addressed this issue have found that when deciding whether a petitioner is entitled to relief under the First Step Act, the court should consider the quantity of cocaine base on which the defendant was convicted rather than the quantity of drugs reported in the PSR. The majority of courts also have concluded that when modifying a sentence under the First Step Act, a court should do so taking into consideration the holdings in <u>Apprendi</u> and <u>Alleyne</u>. <u>See</u>, e.g., <u>United States v. Stanback</u>, 377 F.Supp.3d 618, 623 (W.D. Va. May 2, 2019) (collecting cases); <u>United States v. Opher</u>, No. 00-323-09 (KSH), 2019 WL 3297201 at * 14 (D.N.J. July 23, 2019) (collecting cases); <u>United States v. White</u>, No. 99-cr-628-04, 2019 WL 3228335 (S.D. Tex. July 17, 2019) (collecting cases); and <u>United States v. Paulino</u>, No. 03-cr-0274 JAP, 2019 WL 2437214 (D.N.M., June 11, 2019).

The rationale for these decisions is that in <u>Apprendi</u>, the Supreme Court held that the Sixth Amendment to the Constitution requires that any fact that increases the penalty for a crime beyond the prescribed statutory maximum, other than the fact of a prior conviction, must be submitted to a jury and proved beyond a reasonable doubt. In <u>Alleyne</u>, the Court applied <u>Apprendi</u> to the federal mandatory minimum and maximum sentencing scheme and held that because mandatory minimum sentences increase the penalty for a crime, any fact that increases the mandatory minimum is an element of the crime that must be submitted to the jury. <u>Id.</u> at 116 (overruling <u>Harris v. United States</u>, 536 U.S. 545 (2002)).

The court in Barber's case convicted him of conspiracy to distribute and possess with intent to distribute 50 grams or more of cocaine base, which is the amount on which the jury found him guilty. Under <u>Alleyne</u>, this court is not free to ignore that finding and impose a penalty based on the 1.5 kilograms of cocaine base referenced in the PSR. Thus, although <u>Apprendi</u> and <u>Alleyne</u> are not retroactively applicable on collateral review,[2] this court finds that their holdings are applicable in the context of the First Step Act. Accordingly, the court finds that Barber is eligible for consideration of a modified sentence under the First Step Act.

## IV.

The government next argues that this court should exercise its discretion and deny Barber relief in light of the drug weight and the fact that he would remain subject to the higher penalties if he had been prosecuted after enactment of the Fair Sentencing Act. The

---

[2] See <u>United States v. Sanders</u>, 247 F.3d 139, 146 (4th Cir. 2001) (joining other circuits in finding that <u>Apprendi</u> does not apply retroactively to cases on collateral review); and <u>United States v. Stewart</u>, 540 Fed.Appx. 171 (4th Cir. 2013) (per curiam) (noting that <u>Alleyne</u> has not been made retroactively applicable to cases on collateral review).

government further claims that reducing Barber's sentence will result in an unjustified windfall based solely upon the date of his prosecution and offends the need to avoid unwarranted sentence disparities among similarly situated offenders. This argument is based on the government's previous assertion that in cases brought after the passage of the Fair Sentencing Act but prior to <u>Alleyne</u>, juries were asked to make quantity determinations based on that act's new thresholds for purposes of establishing applicable statutory maximums, and courts could and did impose higher statutory minimums based on their own conclusions regarding drug quantity.

The government appears to be arguing that this court should ignore both the plain language of the First Step Act regarding who is eligible for a sentence reduction as well as the holding in <u>Alleyne</u>, because other defendants sentenced after passage of the Fair Sentencing Act but before <u>Alleyne</u> may have been subject to longer statutory minimum sentences. While the court is aware of the need for consistent sentences among defendants, it is not free to ignore either the law or constitutional precedent. As discussed above, this court finds that the First Step Act applies to Barber and finds that it is compelled by <u>Alleyne</u> to look only at the amount of drugs for which Barber was indicted and found guilty when determining whether he is entitled to a sentence reduction. Accordingly, this court will not refrain from modifying Barber's sentence under the First Step Act because other defendants may have been sentenced differently.

The government's final argument is that even applying the First Step Act, if Barber were sentenced under § 841(b)(1)(B), because of the §851 enhancement his maximum penalty

8

would remain life imprisonment, his career offender guideline would not be reduced, and he would be subject to the same guideline range as he was at his initial sentencing, 360 months to life. The government asserts that a variance below the guideline range should not be granted to ensure parity with defendants who were sentenced after the Fair Sentencing Act and were not eligible for consideration of sentences below the guideline range at the implementation of the reduction granted by Amendment 782.

Once again, the court declines to refrain from applying the First Step Act to Barber because it does not apply to all previously sentenced defendants convicted of cocaine base offenses. While application of the First Step Act may result in disparate sentences, that is an issue for Congress to remedy. The court is obligated to apply the law to those defendants to whom it is directed.

The court finds that the First Step Act applies to Barber and further finds that it has authority under 18 U.S.C. § 3582(c)(1)(B) to modify Barber's sentence, taking into account the advisory nature of the guidelines after Booker[3] and the considerations set forth in 18 U.S.C. § 3553(a). Based on 50 grams of cocaine base, and the § 851 enhancement, if the Fair Sentencing Act had been in effect at the time he was sentenced, Barber would have faced a minimum sentence of 10 years and a maximum sentence of life. 21 U.S.C. § 841 (b)(1)(B) (2018). In turn, that maximum sentence, coupled with his career offender status, would have resulted in a base offense level of 37 and a total offense level of 37. See U.S.S.G. § 4B1.1(b)(2); ECF No. 179.

---

[3] See United States v. Booker, 543 U.S. 220 (2005) (holding that in order to avoid a constitutional violation, the Sentencing Guidelines are advisory and not mandatory).

With a criminal history category of VI, the corresponding advisory range for offense level 37 remains 360 months to life. U.S.S.G. Ch. 5 Pt. A. The court notes that Barber's current sentence, as reduced by the granting of executive clemency, falls below the guideline range that would be applicable to him if the guidelines range were to be adjusted.

In support of his argument that the court should reduce his sentence to time served, Barber asks the court to consider the following information. As a teenager, Barber was a star athlete at Harrisonburg High School in Harrisonburg, Virginia, playing football, baseball, and basketball. He attended Florida State University on a basketball scholarship and during the 1986-1987 season he led the team in points, assists, and steals. Barber was drafted by the Portland Trailblazers, but an injury prevented him from making the team and he never played professional basketball.

Barber has always struggled academically and did not graduate from college. After his injury waylaid his plans to be a professional basketball player, he returned to Harrisonburg without job skills or a college degree. Within a few years, Barber was convicted of cocaine distribution and served approximately one year. ECF No. 177 at ¶ 30. Approximately one year after that, in May 1992, while on supervised probation, Barber again was arrested on cocaine charges and sentenced to 25 years in state prison. In December 1999 he was released from incarceration to a 10-year term of state probation with an expiration date of December 2009. Id. at ¶ 31. Barber was arrested on the instant offense on December 7, 2004 and it was alleged that his participation in the conspiracy began in 2001. Id. at ¶¶ 1, 12, 13, 41.

Since being incarcerated, Barber has had only one disciplinary infraction. He has taken a number of courses and earned a number of certificates. He has paid his special assessment of $100 and paid $1775 of his $2500 fine before the balance was waived when his sentence was commuted. As part of his request for clemency, a prison staff member described Barber as being always present and punctual and setting an excellent example for other people who work with him. He has worked as a unit orderly, in the staff lounge, and in the recreation department. Upon release, he would like to start his own business in the food service industry and has taken classes toward that end. He would like to work with at risk youth in the community, and also would like to be a better husband and father. ECF No. 174-2. Other letters submitted on his behalf as part of his clemency application describe him as being a natural leader, displaying tremendous character under pressure, non-violent, caring and sensitive toward other people, and a role model. ECF No. 174-3 at 1-3. Barber currently is 55 years old and has been incarcerated on this conviction since December 2004.

Barber's history reveals that before he became involved in the drug trade, he was a talented basketball player who worked hard to be a good team member and successful athlete. When he returned to his hometown after he no longer was able to play basketball, he was without an education or job skills and became involved in the drug trade. He was never charged with a weapons offense and there is no indication that he ever engaged in violence associated with the drug trade. Since he has been incarcerated, Barber appears to have matured and has earned the respect of prison personnel. He would have the support of family and friends upon his release.

The court finds that Barber's history as a young man and his behavior while in prison, his age, the amount of time he has served, his family support, and his desire to work in the food service industry upon release all suggest that he be given a time served sentence. The court believes that this sentence is consistent with the policy behind the First Step Act and is sufficient, but not greater than necessary, to meet the sentencing goals of punishment, deterrence, protection of the public, and rehabilitation undergirding the 18 U.S.C. § 3553(a) factors.

Accordingly, the court **GRANTS** Barber's motion under the First Step Act, ECF No. 174, and reduces his sentence to time served, to be followed by an 8-year term of supervised release. This order will be stayed for up to ten days to allow the Bureau of Prisons time to process his release.

An appropriate Order and amended judgment will be entered.

It is so **ORDERED**.

Entered: 08-09-2019

/s/ Michael F. Urbanski

Michael F. Urbanski
Chief United States District Judge